CT Corporation

**Service of Process Transmittal**
03/13/2018
CT Log Number 532961373

**TO:**   John Fick
Vanguard Health Care
9020 Overlook Blvd Ste 202
Brentwood, TN 37027-2755

**RE:**   **Process Served in Mississippi**

**FOR:**   Shady Lawn, LLC  (Domestic State: TN)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ROY JAMES, INDIVIDUALLY, AND ON BEHALF OF AND FOR THE USE AND BENEFIT OF THE WRONGFUL DEATH BENEFICIARIES OF GWENDOLYN SPENCER, Pltf. vs. SHADY LAWN, LLC, etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Warren County Circuit Court, MS<br>Case # 75CI118CV00016 |
| **NATURE OF ACTION:** | Wrongful Death - Failure to Maintain Premises in a Safe Condition - 12/30/2015 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Flowood, MS |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/13/2018 at 14:00 |
| **JURISDICTION SERVED :** | Mississippi |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days of the date of delivery |
| **ATTORNEY(S) / SENDER(S):** | R. PAUL WILLIAMS, III<br>WILLIAMS NEWMAN WILLIAMS, PLLC<br>129 B. SOUTH PRESIDENT ST. (39201)<br>Post Office Box 23785<br>Jackson, MS 39225-3785<br>601-949-5080 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780109969414<br><br>Image SOP<br><br>Email Notification,  John Fick  jtfick@vanguardhc.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>645 Lakeland East Drive<br>Suite 101<br>Flowood, MS 39232<br>214-932-3601 |

Page 1 of  1 / HS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

EXHIBIT "A"

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER                                              **PLAINTIFF**

VS.                                        CAUSE NO.: _18, 0016-CF_

SHADY LAWN, LLC d/b/a SHADY LAWN
HEALTH ND REHABILIATION CENTER,
WEST MISSISSIPPI MANAGEMENT
ASSOCIATES, LLC, UNIDENTIFIED ENTITIES
1-10, AND JOHN DOES 1-10 (as to the SHADY
LAWN NURSING HOME)                                            **DEFENDANTS**

### SUMMONS

TO ANY LAWFUL OFFICER AUTHORIZED TO SERVE PROCESS:
YOU ARE HEREBY COMMANDED TO SUMMON:

    Shady Lawn, LLC. d/b/a Shady Lawn
    Health and Rehabilitation Center c/o
    *C. T. Corporation System – Registered Agent*
    645 Lakeland Drive East Dr., Ste 101
    Flowood, Ms 39232

### NOTICE TO DEFENDANT

    THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT
AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS BY FILING
YOUR ANSWER AS PROVIDED BY LAW AND/OR THE MISSISSIPPI RULES OF CIVIL
PROCEDURE.

    You are required to mail or hand-deliver a copy of a written response to the Complaint to
R. PAUL WILLIAMS, III, the attorney for the Plaintiff, whose post office address is Post Office
Box 23785, Jackson, Mississippi, 39225, and whose street address is 129B South President St.,
Jackson, Mississippi, 39201. Your response must be mailed or delivered within thirty (30) days
from the date of delivery of this Summons and Complaint or a judgment by default will be
entered against you for the money or other things demanded in the Complaint.

    You must also file the original of your response with the Clerk of this Court within a
reasonable time afterward.

Issued under my hand and the seal of said Court, this the _27_ day of February 2018.



JAN DAIGRE
CIRCUIT CLERK

BY _____, D.C.

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB# 102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
Post Office Box 23785
Jackson, Mississippi  `225
Tel:   (601) 949-50
Fax:   (601) 949-335

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER                                                    **PLAINTIFF**

VS.                                              CAUSE NO.: 18, 0016-CI

SHADY LAWN, LLC d/b/a SHADY LAWN
HEALTH ND REHABILIATION CENTER,
WEST MISSISSIPPI MANAGEMENT
ASSOCIATES, LLC, UNIDENTIFIED ENTITIES
1-10, AND JOHN DOES 1-10 (as to the SHADY
LAWN NURSING HOME)                                              **DEFENDANTS**

### COMPLAINT

### JURY TRIAL REQUESTED

COMES NOW, the Plaintiff, Roy James, Individually, and on behalf of and for the use and benefit of the wrongful death beneficiaries of Gwendolyn Spencer, and for her causes of action against Defendants, states:

### I.     PARTIES

1.01    Roy James is the surviving son of Gwendolyn Spencer, deceased, and brings this action individually, and on behalf of and for the use and benefit of the wrongful death beneficiaries of Gwendolyn Spencer, and pursuant to Mississippi law.

1.02    Gwendolyn Spencer was a resident of Shady Lawn, a skilled nursing facility located at 60 Shady Lawn Place, Vicksburg, MS 39180 from on or about December 2013 until December 2015.

1.03    Defendant, Shady Lawn, LLC d/b/a Shady Lawn Health and Rehabilitation Center (hereinafter "Shady Lawn" or "Nursing Home Defendants" or "Shady Lawn Defendants")

**FILED**

FEB 27 2018

JAN ...... CIRCUIT CLERK

BY_____ D.C.

is a business operating in the state of Mississippi with its principal place of business located in

Warren County, Mississippi, and that may be served with process to its registered agent, C.T.

Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232, or a location

where said agent may be found. Shady Lawn was, and remains, a corporation engaged in the

custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired,

and/or in need of nursing care and treatment at Shady Lawn.

    1.04   Defendant, West Mississippi Management Associates, LLC. (hereinafter "West

Mississippi Management" or "Nursing Home Defendants" or "Shady Lawn Defendants") is a

business operating in the state of Mississippi and that may be served with process to its

registered agent, C.T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS

39232, or a location where said agent may be found.

    1.05   Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is

currently unable to identify despite diligent efforts.  Said Defendants are named pursuant to

Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise

tortious with respect to the care and treatment of, or in the staffing, supervision, administration,

and direction of the care and treatment of, Gwendolyn Spencer, during her residency at Shady

Lawn.  Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts

and/or omissions or others with respect to the care and treatment of Gwendolyn Spencer during

her residency at Shady Lawn.

    1.06   Separate Defendants Unidentified Entities 1 through 10 are entities whom

Plaintiff is currently unable to identify despite diligent efforts.  Defendants are named pursuant

to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise

tortious with respect to the care and treatment of Gwendolyn Spencer during her residency at

Shady Lawn. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of Gwendolyn Spencer during her residency at Shady Lawn.

    1.07    At all times material hereto, Defendants owned, operated and/or controlled Shady Lawn. The actions of each of the Defendants' servants, agents and employees as set forth herein, are imputed to the Shady Lawn Defendants, John Does 1 through 10, and Unidentified Entities 1 through 10.

## II.    JURISDICTION AND VENUE

    2.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-1.07 as if set forth herein.

    2.02    Jurisdiction and venue are proper in Warren County, Mississippi, in that a substantial alleged act or omission occurred in Warren County, Mississippi and at the time of her death, Ms. Spencer resided in Warren County, Mississippi.

## III.    FACTUAL SUMMARY

    3.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-2.02 as if set forth herein. Further, Plaintiff has attached the Certificate of Expert Consultation as **Exhibit "A"**.

    3.02    Ms. Spencer began her residency with the Shady Lawn Defendants on or around December 2013 through on or about December 2015. That upon admission to Defendants facility, Ms. Spencer was of unsound mind and incapable of managing the ordinary affairs of her life. Ms. Spencer continued to be of unsound mind until her death. Ms. Spencer died as a result of the injuries she suffered at Defendant's facility. That throughout said residency, the Facility, including any of their staff or other personnel, failed to possess and exercise that degree of care,

diligence, and skill as it ordinarily possessed and exercised by minimally competent and reasonably diligent, skillful, careful and prudent nursing homes, and their staff or other personnel.   Ms. Spencer suffered dehydration, contracted numerous infections, medical conditions, pressure sores and/or skin tears, bruises, injuries, abuse, unexplained injuries, had an unkept appearance, suffered disfigurement, poor hygiene, mental decline, and she suffered other injuries, and ultimately death, as a result of the improper care and treatment provided to her by the Facility and/or their staff or other personnel throughout her residency with the Facility.  Ms. Spencer suffered many incidents, abuse, improper care, and injuries, including but not limited to the following:

    1.   As a result of The Facility's negligence Ms. Spencer developed severe Stage IV pressure injuries. The facility failed to provide Ms. Spencer with adequate pressure relief during her residency.

    2.   Ms. Spencer required hospitalizations as a result of the negligence and inaction of the Facility.

    3. The Facility failed to meet the standard of care in regard to the care rendered Ms. Spencer.

    4. Ms. Spencer suffered unexplained injuries and other skin problems.

    5. Ms. Spencer received poor personal care while she was a resident of The Facility.

    6. Ms. Spencer received poor hygienic care while she was a resident of The Facility.

    7. Ms. Spencer suffered skin breakdown as a result of the Facility's negligence.

    8. Ms. Spencer suffered infections and dehydration as a result of the Facility's negligence.

    9. As a result of the individual and/or combined negligence, gross negligence, reckless, and willful/wanton actions of the Facility and/or their staff or other personnel, Ms. Spencer suffered extensive injuries and damages, including loss of her dignity, great pain and suffering, disfigurement, mental anguish, and ultimately death. The Facility and/or their staff or other personnel failed to meet the appropriate

standard of care with regard to the care and treatment provided to Ms. Spencer throughout her residency with the Facility.

The conditions reflected herein are readily apparent based on a review of Ms. Spencer's chart. As a result of the individual and/or combined negligence, gross negligence, reckless, and willful/wanton actions of the Defendants and/or their staff or other personnel, Ms. Spencer suffered extensive injuries and damages, including loss of her dignity, great pain and suffering, disfigurement, wounds, infections, mental anguish, and ultimately death. The Facility and/or their staff or other personnel failed to meet the appropriate standard of care with regard to the care and treatment provided to Ms. Spencer throughout her residency with the Facility.

3.03    Defendants were well aware of Ms. Spencer's medical condition and the care that she required when they represented that they could adequately care for her needs.

3.04    At all times material to this lawsuit, Defendants held themselves out as being:

a.    Skilled in the performance of nursing, rehabilitative and other medical support services;

b.    Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

c.    Able to specifically meet the total nursing home, medical, and physical therapy needs of Gwendolyn Spencer and other residents like her; and,

d.    Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

3.05    The Shady Lawn Defendants failed to discharge their obligations of care to Gwendolyn Spencer. As a consequence, thereof, Gwendolyn Spencer suffered catastrophic injuries, disfigurement, extreme pain and suffering, mental anguish, and death. The scope and

severity of the recurrent wrongs inflicted upon Gwendolyn Spencer while under the care of the

Defendants accelerated the deterioration of her health and physical condition beyond that caused

by the normal aging process and resulted in physical and emotional trauma as described above.

3.06    Ms. Spencer required hospitalizations as a result of the negligence and inaction of

the Defendants. Ms. Spencer received poor personal care while she was a resident of the

Facility. The charting was infrequent, had gaps, and did not meet the standard of care. All of the

above identified injuries, as well as the conduct specified below, caused Gwendolyn Spencer to

lose her personal dignity and her death to be preceded by extreme and unnecessary pain,

degradation, anguish, and emotional trauma.

3.07    The wrongs complained of herein were of a continuing nature and occurred

throughout Gwendolyn Spencer's stay at Defendants' facility.

3.08    Plaintiff alleges that on all of the occasions complained of herein, Gwendolyn

Spencer was under the care, supervision, and treatment of the agents and/or employees of

Defendants and that the injuries complained of herein were proximately caused by the acts and

omissions of Defendants named herein.

3.09    Defendants had vicarious liability for the acts and omissions of all persons or

entities under Defendants' control, either directly or indirectly, including their employees,

agents, consultants, and independent contractors, whether in-house or outside entities,

individuals, agencies, or pools causing or contributing to the injuries of Gwendolyn Spencer.

3.10    Defendants have joint and several liabilities for the actions complained of herein

because they consciously and deliberately pursued a common plan or design to commit the

tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST THE SHADY LAWN DEFENDANTS, JOHN DOES 1-10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.11    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-3.10 as if set forth herein.

3.12    Defendants owed a duty to residents, including Gwendolyn Spencer, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

3.13    Defendants owed a duty to residents, including Gwendolyn Spencer, to exercise reasonable care in providing care and services in a safe and beneficial manner.

3.14    Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of Gwendolyn Spencer.

3.15    The negligence of Defendants includes, but is not limited to, the following acts and omissions:

a.      The failure to provide Gwendolyn Spencer with adequate fluid intake to prevent dehydration;

b.      The failure to provide adequate nutrition, prevent weight loss, and provide appropriate nutritional interventions;

c.      The failure to provide Gwendolyn Spencer with adequate and appropriate hygiene care, including the failure to bathe her daily after each incontinent episode so as to prevent urine and fecal contact with skin for an extended period of time;

d.      The failure to provide and ensure that Gwendolyn Spencer received adequate hygiene and sanitary care to prevent infection;

e.      The failure to provide adequate skin care, including turning and repositioning of Gwendolyn Spencer in order to provide pressure relief so as to prevent the

formation of skin tears and pressure sores on her body;

f.      The failure to provide the minimum number of staff necessary to assist the residents, including Gwendolyn Spencer, with their needs;

g.      The failure to provide adequate supervision for Gwendolyn Spencer to protect her from unexplained injuries within the facility;

h.      The failure to provide appropriate therapies to avoid Ms. Spencer's preventable cognitive and social decline;

i.      The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Gwendolyn Spencer's condition;

j.      The failure to provide sufficient numbers of qualified nursing personnel to meet the total needs of Gwendolyn Spencer;

k.      The failure to increase the number of nursing personnel to ensure that Gwendolyn Spencer:

    1.    Received timely and accurate care assessments;

    2.    Received prescribed treatment, medication, and diet;

    3.    Received necessary supervision; and

    4.    Received timely nursing and medical intervention due to a significant change in condition.

l.      The failure to provide nursing personnel sufficient in number to ensure that Gwendolyn Spencer attained and maintained her highest practicable level of physical, mental and psychosocial well-being;

m.      The failure to provide adequate supervision to the nursing staff so as to ensure that Gwendolyn Spencer received adequate and proper nutrition, fluids,

therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Gwendolyn Spencer;

n.    The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Gwendolyn Spencer received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

o.    The failure to provide a nursing staff that was properly staffed, qualified, and trained;

p.    The failure to adopt adequate guidelines; policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility of any interested person;

q.    The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

r.    The failure to provide care, treatment, and medication in accordance with physician's orders;

s.    The failure to provide a safe environment;

t.    The failure to maintain medical records on Gwendolyn Spencer in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1.    The diagnosis of Gwendolyn Spencer;

2.    The treatment of Gwendolyn Spencer; and

3.    The assessment and establishment of appropriate care plans of care and treatment; and

u.    The failure to protect Gwendolyn Spencer from harm within the facility.

v.    The failure to provide proper pressure sore relief, interventions, and prevention.

3.16    A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Gwendolyn Spencer.

3.17    As a direct and proximate result of the negligence of Defendants as set out above, Gwendolyn Spencer suffered injuries, as set forth herein all of which required hospitalization and medical treatment, and all of which required Ms. Spencer to incur significant hospital and medical expenses.

3.18    WHEREFORE, based on such conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT TWO: MEDICAL MALPRACTICE AGAINST THE SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.19    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01-3.18, as if fully set forth herein.

3.20    Separate Defendants owed a duty to residents, including Gwendolyn Spencer, to

hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

3.21    Separate Defendants owed a duty to residents, including Gwendolyn Spencer, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

3.22    Separate Defendants owed a duty to assist all residents, including Gwendolyn Spencer, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

3.23    Separate Defendants failed to meet the standard of care and violated their duty of care to Gwendolyn Spencer through mistreatment, abuse, and neglect. The medical negligence of these Defendants includes, but is not limited to, the following acts and omissions:

> a.    The failure to provide proper supervision and interventions to prevent Gwendolyn Spencer's existing medical conditions to worsen to the point of becoming life-threatening;
>
> b.    The failure to properly assess Gwendolyn Spencer for the risk of development and progression of skin tears, pressure sores, injuries, and infections;
>
> c.    The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Gwendolyn Spencer;
>
> d.    The failure to monitor and document significant changes in Gwendolyn Spencer's condition;
>
> e.    The failure to provide and ensure adequate nursing care plan revisions and

modifications as the needs of Gwendolyn Spencer changed;

f.      The failure to implement and ensure that an adequate nursing care plan for Gwendolyn Spencer was followed by nursing personnel;

g.      The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

h.      The failure to provide Gwendolyn Spencer with adequate and appropriate observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

i.      The failure to provide care, treatment, and medication in accordance with physician's orders;

j.      The failure to properly and timely notify a physician of significant changes in Gwendolyn Spencer's physical condition;

k.      The failure to maintain medical records on Gwendolyn Spencer in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

   1.      The diagnosis of Gwendolyn Spencer;

   2.      The treatment of Gwendolyn Spencer; and

   3.      The assessment and establishment of appropriate care plans of care and treatment.

l.      The failure to adequately and appropriately monitor Gwendolyn Spencer and recognize significant changes in her health status;

m.      The failure to respond to significant signs and symptoms of change in the

condition of Gwendolyn Spencer;

n.    The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medical aides to meet the total needs of Gwendolyn Spencer;

o.    The failure to increase the number of nursing personnel to ensure that Gwendolyn Spencer:

  1. received timely and accurate assessments;

  2. received prescribed treatment, medical and diet;

  3. received necessary supervision;

  4. received timely nursing and medical intervention due to a significant change in condition.

p.    The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment of Gwendolyn Spencer and other residents in order to protect Gwendolyn Spencer's skin integrity and to prevent the formation of skin tears, pressure sores, lesions, rashes, bruises, contractures, and infections;

q.    The failure to respond to significant signs and symptoms of change in the condition of Gwendolyn Spencer;

r.    The failure to provide nursing personnel sufficient in number to ensure that Gwendolyn Spencer attained and maintained her highest level of physical, mental, and psychosocial well-being;

s.    The failure to provide adequate supervision to the nursing staff so as to ensure that Gwendolyn Spencer received adequate and proper nutrition,

fluids, therapeutic diet, sanitary care treatments, medications, safety, and skin care to prevent injuries at the facility;

t.   The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure Gwendolyn Spencer received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

u.   The failure to provide a nursing staff that was properly staffed, qualified and trained;

v.   The failure to provide and ensure an adequate nursing care plan as well as revisions based on the needs of Gwendolyn Spencer;

w.   The failure to implement and ensure that an adequate nursing care plan for Gwendolyn Spencer was followed by nursing personnel;

x.   The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

y.   The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

z.   The failure to properly assess Gwendolyn Spencer for the risk of injury

and development of bruises, pressure sores, skin tears, lesions, and infection;

aa.   The failure to provide proper devices to Gwendolyn Spencer;

bb.   The failure to provide Gwendolyn Spencer with adequate and appropriate skin care, including timely dressing changes, so as to prevent the aggravation and deterioration of pressure sores, skin tears and/or lesions on her body;

cc.   The failure to provide Gwendolyn Spencer with adequate and appropriate observation and examination so as to timely and adequately intervene to prevent the development, aggravation and progression of bruises, pressure sores, skin tears, and infection;

dd.   The failure to provide Gwendolyn Spencer with adequate and appropriate nursing care, treatments, and medication for skin tears after development over the body of Gwendolyn Spencer;

ee.   The failure to provide Gwendolyn Spencer with adequate and appropriate nursing care, treatments, and medication for infection;

ff.   The failure to provide care, treatment, and medication in accordance with physician's orders;

gg.   The failure to properly and timely notify Gwendolyn Spencer's attending physician of significant changes in Gwendolyn Spencer's physical condition, to wit: injuries, and persistent, unresolved problems relating to the care and physical condition of Gwendolyn Spencer resulting in unnecessary pain, agony, and suffering on the part of Gwendolyn Spencer;

hh.   The failure to provide Gwendolyn Spencer with adequate and appropriate assessment for fluid management to prevent dehydration;

ii.   The failure to maintain an adequate and appropriate fluid maintenance program;

jj.   The failure to ensure that Gwendolyn Spencer received adequate assessment of her nutritional needs;

kk.   The failure to maintain medical records on Gwendolyn Spencer in accordance with acceptable professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1.   the diagnosis of Gwendolyn Spencer;

2.   the treatment of Gwendolyn Spencer; and

3.   the assessment and establishment of appropriate care plans of care and treatment;

ll.   The failure to adequately and appropriately monitor Gwendolyn Spencer and recognize significant changes in her health status; and

mm.   The failure to properly notify the family of Gwendolyn Spencer of significant changes in her health status.

3.24   A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above paragraphs. Each of the foregoing acts of medical negligence on the part of Defendants was a proximate cause of Gwendolyn Spencer's injuries and death. Gwendolyn Spencer's injuries and death were foreseeable to these Defendants.

3.25    Defendants' conduct in breaching the duties owed to Gwendolyn Spencer was grossly negligent, willful, wanton, malicious and reckless.

3.26    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Gwendolyn Spencer suffered injuries and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment.  As a result, Ms. Spencer incurred significant medical expenses.

3.27    WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE: MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF GWENDOLYN SPENCER AGAINST SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.28    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01- 3.27, as if fully set forth herein.

3.29    The longevity, scope and severity of Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the safety of others, including Gwendolyn Spencer.  Specifically, such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as Gwendolyn Spencer, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to Ms. Spencer.

3.30    The malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including Gwendolyn Spencer, includes, but is not

limited to, acts and omissions as alleged in the above paragraphs, as well as the following:

1.  The failure to provide Gwendolyn Spencer with necessary and adequate continence care and assistance with toileting;

2.  The failure to provide Gwendolyn Spencer with adequate and appropriate hygiene care;

3.  The failure to provide and ensure that Gwendolyn Spencer received adequate hygiene and sanitary care;

4.  The failure to provide clean bed linens to Gwendolyn Spencer as needed to prevent urine and fecal contact for an extended period of time;

5.  The failure to provide adequate devices and interventions to Gwendolyn Spencer;

6.  The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

7.  The failure to provide adequate supervision for Gwendolyn Spencer to prevent falls and unexplained injuries within the facility;

8.  The failure to provide proper custodial care, supervision, interventions and observation to prevent Gwendolyn Spencer's existing medical conditions and injuries to worsen to the point of becoming life-threatening;

9.  The failure to properly assess Gwendolyn Spencer for the risk of development and worsening of skin conditions;

10. The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Gwendolyn Spencer's condition;

11.    The failure to protect Gwendolyn Spencer from receiving unexplained injuries and falls,

12.    The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nursing assistants, and medication aides (nursing personnel) to meet the total needs of Gwendolyn Spencer;

13.    The failure to increase the number of personnel to ensure that Gwendolyn Spencer:

I.      Received timely and accurate care assessments;

II.     Received prescribed treatment, medication, and diet;

III.    Received necessary supervision; and

IV.     Received timely intervention due to a significant change in condition.

14.    The failure to provide nursing personnel sufficient in number to ensure that Gwendolyn Spencer attained and maintained her highest level of physical, mental and psychosocial well-being;

15.    The failure to provide adequate supervision to the nursing staff so as to ensure that Gwendolyn Spencer received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Ms. Spencer;

16.    The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that Gwendolyn Spencer received appropriate nursing care,

in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Division of Health Facilities Licensure and Certification;

17. The failure to provide nursing staff that was properly staffed, qualified, and trained;

18 The failure to provide and ensure an adequate nursing care plan based on the needs of Gwendolyn Spencer;

19. The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Gwendolyn Spencer changed;

20. The failure to implement and ensure that an adequate nursing care plan for Gwendolyn Spencer was followed by nursing personnel;

21. The failure to adopt adequate guidelines, policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person;

22. The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care;

23. The failure to properly and timely notify Gwendolyn Spencer's attending physician or hospital of significant changes in Ms. Spencer's physical condition, specifically: skin tears, pressure sores, infections, bruises,

head injuries, unexplained injuries, malnutrition, dehydration, poor hygiene, disfigurement, and persistent and unresolved problems relating to the care and physical condition of Gwendolyn Spencer resulting in her pain, agony, and suffering;

24.    The failure to provide a safe environment;

25.    The failure to maintain medical records on Gwendolyn Spencer in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

      i.   The diagnosis of Gwendolyn Spencer;

      ii.  The treatment of Gwendolyn Spencer; and

      iii. The assessment and establishment of appropriate care plans of care and treatment.

26.    The failure to adequately and appropriately monitor Gwendolyn Spencer and recognize significant changes in her health status;

27.    The failure to protect Gwendolyn Spencer from harm within the facility;

28.    The failure to respond to significant signs and symptoms of change in the condition of Gwendolyn Spencer;

29.    The failure to provide Gwendolyn Spencer with appropriate skin care;

30.    The failure to provide Gwendolyn Spencer with adequate and appropriate observation and examination for skin breakdown.

3.31    As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others,

including Gwendolyn Spencer, she suffered injuries as set herein, all of which required Ms. Spencer to incur significant medical expenses as well as suffer extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which resulted in death.

    3.32    WHEREFORE, based on such conduct of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damage against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT FOUR: BREACH OF FIDUCIARY DUTY AGAINST THE SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

    3.33    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.32 as if fully set forth herein.

    3.34    Because of her mental and physical infirmities, Gwendolyn Spencer was particularly dependent upon Defendants, their employees and agents for her daily care and well-being. Because of the nature of this dependency, the representations of Defendants that they could and would provide necessary care and the dominant influence Defendants exhorted over Gwendolyn Spencer on a daily basis while she resided at Shady Lawn. Ms. Spencer and her family held in all Defendants a special confidence and trust. Defendants accepted this special confidence and trust by admitting Gwendolyn Spencer to their facilities and by determining the level of care to be provided to Ms. Spencer.

    3.35    Gwendolyn Spencer and her family relied upon Defendants' superior knowledge, skill, and abilities, which they held themselves out to possess. Gwendolyn Spencer and her

family also relied on the Defendants to provide care for Gwendolyn Spencer who, because of her age and infirmities, was not able to care for herself.

3.36    By virtue of the nature of the services Defendants provide to Gwendolyn Spencer, the special relationship that existed between Defendants and Ms. Spencer, the extortion of influence Defendants had over Ms. Spencer, the huge disparity of power and unequal bargaining position existing between Defendants and Ms. Spencer, as well as all of the other surrounding circumstances, including but not limited to, Gwendolyn Spencer's mental and physical infirmities, Defendants occupied a position of trust and confidence toward Ms. Spencer that required among other things fidelity, loyalty, good faith, and fair dealing by the Defendants.

3.37    By accepting payment for services and care that was not provided to Gwendolyn Spencer and concealing and failing to disclose the abuse and neglect of Ms. Spencer, Defendants breached their confidential and fiduciary duties, namely, the duties of good faith and fair dealing, to Ms. Spencer by failing to provide the appropriate level of care and services to which she was entitled.

3.38    As a proximate cause of the foregoing breaches of duty by Separate Defendants, Gwendolyn Spencer suffered injuries as set forth herein.

3.39    WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Plaintiff also seeks the imposition of a constructive trust on all wrongfully profits and proceeds arising out of Separate Defendants' breach of fiduciary duty to Gwendolyn Spencer.

## COUNT FIVE: STATUTORY SURVIVAL CLAIM AGAINST
## THE SHADY LAWN DEFENDANTS, JOHN DOES 1-THROUGH 10, AND
## UNIDENTIFIED ENTITIES 1 THROUGH 10

3.40   Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.39, as if fully set forth herein.

3.41   As a direct and proximate result of the negligence, malice, and/or gross negligence that evidenced and willful, wanton or reckless disregard for the safety of others, including Gwendolyn Spencer, Ms. Spencer suffered injuries and death as set forth herein, all of which caused physical pain and suffering, mental anguish, humiliation, embarrassment, disfigurement, fright, and emotional distress.   As a result, Gwendolyn Spencer incurred significant hospital and medical expenses.

3.42   As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Gwendolyn Spencer died on December 30, 2015, thereby incurring funeral, burial, and other related expenses.

3.43   WHEREFORE, based on and arising out of the conduct of Separate Defendants as set out above, Plaintiff asserted a claim for judgment for compensatory and punitive damages for Gwendolyn Spencer's death, including, but not limited to medical expenses, costs of administration of Gwendolyn Spencer's estate, and other related expenses incurred as a result of Separate Defendant's wrongful acts and omissions, as well as damages for physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT SIX: STATUTORY WRONGFUL DEATH CLAIM AGAINST
## SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED
## ENTITIES 1 THROUGH 10

3.44    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.43, as if fully set forth herein.

3.45    As a direct and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Gwendolyn Spencer, Defendants caused the death of Gwendolyn Spencer.

3.46    As a direct, natural and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Gwendolyn Spencer suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement, and fright, all of which required hospitalization and medical treatment. Gwendolyn Spencer died on December 30, 2015, thereby incurring funeral, burial and other related expenses.

3.47    As a result of the death of Gwendolyn Spencer, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship, compassion, affection, and love.

3.48    WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants including but not limited to Gwendolyn Spencer's physical pain and suffering, mental anguish, disfigurement, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Additionally, based on such conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with Gwendolyn Spencer including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection,

training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled.

## COUNT SEVEN: INDIVIDUAL LIABILITY AND LIABILITY PURSUANT TO PIERCING THE CORPORATE VEIL AGAINST WEST MISSISSIPPI MANAGEMENT ASSOCIATES, LLC, AND ANY OF THE OTHER OWNERS OR OPERATORS OF SHADY LAWN NAMED IN THIS COMPLAINT, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.49    Plaintiff re-alleges and incorporates that allegations in paragraphs 1.01-3.48, as if fully set forth herein.

3.50    Separate Defendants, West Mississippi Management, John Does 1-10, and unidentified entities 1-10 owned and operated Shady Lawn. These named Defendants as corporate officers, owners, and operators, directly participated and/or authorized the commission of the negligent, grossly negligent, and fraudulent acts as articulated above, and are thus, personally liable for the torts named herein. These named Defendants allocated the financial resources in such a way as to create inadequate staffing, supervision, and supplies.   As articulated above, these inadequacies caused and contributed to Ms. Spencer's injuries and death.

3.51    These Defendants used Shady Lawn to perpetuate a fraud upon Plaintiff. Defendants were intent on obtaining Plaintiff's funds for their own personal use with no intention of performing their duties and used Shady Lawn to improperly shield themselves from personal liability. Shady Lawn was not properly capitalized, was not properly staffed, and did not have adequate supplies. Said Defendants abused the corporate entities of Shady Lawn to perpetuate fraud and evade contractual and tort responsibility.

3.52    Defendants intentionally engaged in common law fraud and knowingly concealed or failed to disclose material facts, even though Defendants knew or reasonably should have known, that because of the surrounding circumstances that Gwendolyn Spencer and her family

were ignorant of the articulated material facts and did not have an equal opportunity to discover the truth. Specifically, Defendants either personally or through their agents or employees misrepresented the material facts either by omission or affirmative statements that they were willing to, and would, provide the proper care, treatment and services to Gwendolyn Spencer, even though Defendants know that they would provide as little care and treatment and services as possible in order to maximize Defendants' profits at the expense of Gwendolyn Spencer. Further, Defendants made the misrepresentations with the intent to induce Gwendolyn Spencer and her family to take some action: specifically, to admit and not remove Gwendolyn Spencer from Defendants' facility, by concealing or failing to disclose the material facts that there was an epidemic of resident harm and injury, as well as a practice of utilizing insufficient numbers of nursing aides who were not qualified to render care or services in accordance with the law during Mr. Gwendolyn Spencer's residency. As a proximate cause of Defendants' concealment and failure to disclose, these adverse material facts, Gwendolyn Spencer suffered injuries as set forth above.

3.53    Said Defendants are liable as owners and operators of Shady Lawn for their negligent acts or omissions in the care of the residents, including Ms. Spencer. The corporate identity of Shady Lawn should be disregarded where said Defendants used the corporation to perpetrate a fraud and as a mere instrumentality of Defendants. Said Defendants were de facto owners and operators (through their corporate layering) of Shady Lawn and were negligent and grossly negligent in their operation of Shady Lawn. Upon information and belief, said Defendants acted to ensure that all of the duties of the administration and agreements with Shady Lawn are carried out and failed in these duties. Upon information and belief, said Defendants oversee facilities in Mississippi as well as handle resident care issues. These activities are the

very wrongs in which Plaintiff asserts a claim against, alleging short-staffing and claims of failure to properly staff, supervise, and provide adequate services. Said Defendants are liable, not in their capacity as corporate officers or directors, but for their own individual wrongdoing.

3.54    Said Defendants are liable as owners and operators of Shady Lawn for their negligent acts or omissions in the care of the residents, including Ms. Spencer. The corporate identity of Shady Lawn should be disregarded where said Defendants used the corporation to perpetrate a fraud and as a mere instrumentality of Defendants. Said Defendants were de facto owners and operators (through their corporate layering) of Shady Lawn and were negligent and grossly negligent in their operation of Shady Lawn. Upon information and belief, said Defendants acted to ensure that all of the duties of the administration and agreements with Shady Lawn are carried out and failed in these duties. Upon information and belief, said Defendants oversee facilities in Mississippi as well as handle resident care issues. These activities are the very wrongs in which Plaintiff asserts a claim against, alleging short-staffing and claims of failure to properly staff, supervise, and provide adequate services. Said Defendants are liable, not in their capacity as corporate officers or directors, but for their own individual wrongdoing.

3.55    Defendants are further liable for their provision of nurse consultants to the facility. Defendants had in place a system of providing nurse consultants to the nursing home facilities. The nurse consultants provided by Defendants directly affected patient care at Shady Lawn. Upon information and belief, nurse consultants are hired by West Mississippi Management, and paid by said entity(s). The facility is supervised by West Mississippi Management, and sent by said entity(s) to visit the nursing homes, including Shady Lawn. The result of the failure of West Mississippi Management, and Shady Lawn's nurse consultants to perform their job, including conduct adequate quality assurance audits, caused the residents of

Shady Lawn, including Ms. Spencer, to be harmed due to the failures of the nursing staff.

3.56   WHEREFORE, based on such conduct of Separate Defendants as set of above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement, and death in an amount to be determined by the jury, plus costs and all relief to which Plaintiff is entitled by law.

## COUNT EIGHT: NEGLIGENCE, NEGLIGENT SUPERVISION, AND INADEQUATE CONTROL OF SHADY LAWN BY WEST MISSISSIPPI MANAGEMENT, AND THEIR AGENTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.57   Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01 through 3.56 as if fully set forth herein.

3.58   Defendants West Mississippi Management and their agents and officers, John Does 1-10, and Unidentified Entities 1 through 10 were the owners, operators, service providers, and managers of Shady Lawn during the residency of Ms. Spencer.   Upon information and belief, Defendants' authority is clear through their actions as well as their agreements.   By becoming operators and managers, Defendants willingly and voluntarily assumed the ultimate responsibility to operate their nursing home in a manner that would ensure that each resident, including Ms. Spencer, met her highest practicable physical, mental and psychosocial well-being.   Further, West Mississippi Management, were negligent in their provision of support services to Shady Lawn.   West Mississippi Management were charged with properly supervising both their employees and agents, as well as Shady Lawn's employees and agents.

3.59   West Mississippi Management, failed in its operation, supervision and control of Shady Lawn's employees and agents.   The Shady Lawn facility operated in a negligent manner both a global and a daily basis at the hands and direction of West Mississippi Management.

Upon information and belief, West Mississippi Management were routinely involved in the decision-making, supervision, and control of Shady Lawn employees. Upon information and belief, actions taken by West Mississippi Management in providing nurse consultants, as well as others in supervisory roles at Shady Lawn, failed to conform to the standard of care. West Mississippi Management, by and through this supervision and support, were involved in the management, care and treatment of residents at the Facility in general, and to Ms. Spencer, in particular, and failed in these actions.

3.60   West Mississippi Management had in place a system of providing nurse consultants to the nursing home facilities, including Shady Lawn. Nurse consultants are hired by West Mississippi Management, paid by them, supervised by them and sent by them to visit the nursing homes, including Shady Lawn. Nurse Consultants provided assistance in identifying interventions that **should** be in place. Upon information and belief, nurse consultants offered training, staffing resources, routine visits, and guidance and meetings with leadership, If the Nursing Home Defendants' nurse consultant had been doing her job, the chart reviews and her visits would have demonstrated deficiencies and, at the very least, it would have been discovered that Ms. Spencer had improper and/or ineffective interventions in place. If the nurse consultant had reviewed Ms. Spencer's records, it would have become apparent that something was very wrong. Because of the failures of the nurse consultants to discover, through their responsibility to review charts, the failures listed herein, Ms. Spencer was harmed and died. The nurse consultant breached the standard of care as to monitoring the care and treatment of Ms. Spencer. The result of the failure of West Mississippi Management's nurse consultants to conduct adequate quality assurance audits caused the residents of Shady Lawn, including Ms. Spencer, to be harmed due to the failures of the nursing staff.

3.61    West Mississippi Management's decisions as to employing sufficient numbers and adequate levels of staffing directly impacted the care provided to residents, including Ms. Spencer. Upon information and belief, West Mississippi Management also had absolute and complete authority to allocate and/or apportion costs and expenses to Shady Lawn and in such manner as West Mississippi Management may deem necessary or appropriate from time to time. This allocation of costs directly affected the care received by residents, including Ms. Spencer. The allocation of resources or lack thereof at Shady Lawn contributed to Ms. Spencer's injuries as alleged herein.

3.62    West Mississippi Management negligently and improperly directed the care provided to the residents at Shady Lawn. Upon information and belief, West Mississippi Management committed negligence in regard to decision-making control, committed negligence in regard to who was staffed, how much was staffed, budgeting, directing care through corporate nurses, auditing care provided, providing and implementing policies and procedures, and providing other "support services", among other failures in services.

3.63    Upon information and belief, West Mississippi Management, and their agents were required to be aware of matters occurring at the nursing home and to take affirmative steps to correct problems particularly when those problems could reasonably cause or contribute to an injury to a resident of the facility.

3.64    Upon information and belief, West Mississippi Management, and their agents were charged with creating and implementing proper policies and procedures and training and failed in this endeavor.

3.65    Upon information and belief, West Mississippi Management, and their agents were required to properly supervise the nursing homes they had agreed to provide "support

services" to, including Shady Lawn, and failed to supervise each nursing home in the manner in which a reasonably prudent person similarly situated would and failed to similarly provide adequate support services and take steps to ensure that the nursing home residents, including Ms. Spencer, were receiving adequate and appropriate care.

3.66    Upon information and belief, West Mississippi Management, and their agents failed to timely and adequately review records related to the operation of each nursing home (including a review by nurse consultants and quality assurance personnel) in order to ensure that the residents, including Ms. Spencer, received adequate and appropriate care.

3.67    West Mississippi Management, and their agents failed to ensure that the facility had sufficient numbers of qualified nursing personnel, depending upon the number of residents and the acuity level of the facility.  Such failures resulted in injuries to Ms. Spencer, including falls and injuries, as set forth in the preceding paragraphs.

3.68    West Mississippi Management, and their agents failed to adequately assess, evaluate and supervise nursing personnel so as to ensure that Ms. Spencer received appropriate nursing care, in accordance with Defendants' policies and procedures.

3.69    West Mississippi Management, and their agents failed to provide nursing staff that was properly staffed, qualified, and trained.

3.70    A reasonably prudent company/owner in the position of West Mississippi Management, operating under the same or similar conditions, would not have failed to provide the services, supervision, operation, support and care listed in the above paragraphs. Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of Ms. Spencer's injuries.

3.71    A reasonably careful management company, managerial authority, or service

provider operating under similar circumstances, would foresee that the failure to provide the ordinary care, supervision, operation, support, and services listed above would result in devastating injuries and death to Ms. Spencer.

3.72    Defendants' conduct in breaching the duties owed to Ms. Spencer was grossly negligent, willful, wanton, malicious and reckless.

3.73    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Ms. Spencer suffered injuries and death, and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment. As a result, Ms. Spencer incurred significant medical expenses.

3.74    WHEREFORE, upon information and belief, West Mississippi Management controlled the management, care and treatment of the residents of Shady Lawn, such as Ms. Spencer, and are responsible for the negligent acts complained of herein. Based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT NINE: CLAIM OF DUTY OF WEST MISSISSIPPI MANAGEMENT TO MS. SPENCER BASED ON AGENCY

3.75    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01 through 3.74 as if fully set forth herein.

3.76    Defendants West Mississippi Management were the agents of Shady Lawn and, as such agents they negligently failed to fulfill their duties owed to third persons, such as Ms. Spencer.

3.77   In its failure to fulfill its duties to Shady Lawn, West Mississippi Management are liable for their negligence, in the performance of its duties to such third persons, such as Ms. Spencer.

3.78   As articulated herein, West Mississippi Management controlled the management, operation and activities of Shady Lawn to such an extent that it amounted to a duty of care owed to third persons, such as Ms. Spencer.

3.79   As articulated herein, West Mississippi Management breached the standard of care, by and through its acts of omission and commission, which caused or contributed to the injuries and death of Ms. Spencer.

3.80   West Mississippi Management owed an obligation to use its control, "support", and decision making not to cause injury or death to those third persons who were residents of Shady Lawn, including Ms. Spencer.

3.81   West Mississippi Management violated their obligation/duty relating to its control of Shady Lawn, which violation of its obligation/duty caused or contributed to the injuries and death of Ms. Spencer.

3.82   WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## PRAYER FOR RELIEF

Pursuant to Mississippi Rules of Civil Procedure, Plaintiff demands that all issues of fact in the case be tried to a jury.

WHEREFORE, the Plaintiff, Roy James, Individually, and on behalf of and for the use and benefit of the wrongful death beneficiaries of Gwendolyn Spencer, and for her causes of action, prays for judgment against all Defendants, as follows:

1.      For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damages sustained;

2.      For all general and special damages caused by the alleged conduct of Defendants;

3.      For the costs of litigating this case;

4.      For punitive damages sufficient to punish Defendants for their egregious conduct and to deter all Defendants from repeating such atrocities; and

5.      For all relief to which Plaintiff is entitled by Mississippi law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, sues and demands judgment of and from the Defendants, for all damages allowed under law including compensatory damages and punitive damages in an amount to be determined by the jury, and for any such other relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the _____ day of February, 2018.

ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER

BY:_____
R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB #102347)
WILLIAMS NEWMAN WILLIAMS, PLLC
129 B. SOUTH PRESIDENT ST. (39201)
Post Office Box 23785

Jackson, Mississippi 39225
Tel:    (601) 949-5080
Fax:    (601) 949-5538
Email: paul@wnwlegal.com

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER                                           **PLAINTIFF**

VS.                                           CAUSE NO.:_____

SHADY LAWN, LLC d/b/a SHADY LAWN
HEALTH ND REHABILIATION CENTER,
WEST MISSISSIPPI MANAGEMENT
ASSOCIATES, LLC, UNIDENTIFIED ENTITIES
1-10, AND JOHN DOES 1-10 (as to the SHADY
LAWN NURSING HOME)                                         **DEFENDANTS**

### CERTIFICATE OF EXPERT CONSULTATION
### PURSUANT TO MISSISSIPPI CODE ANNOTATED § 11-1-58

I hereby certify pursuant to Miss. Code Ann. § 11-1-58(1)(a) that I have reviewed the

facts of this case and have consulted with at least one expert qualified pursuant to the Mississippi

Rules of Civil Procedure and the Mississippi Rules of Evidence to give expert testimony as to

standard of care or negligence and who I reasonably believe is knowledgeable in the relevant

issues involved in this action. I have concluded on the basis of such review and consultation that

there is a reasonable basis for the commencement of this action.

SO CERTIFIED this ___ day of February 2018.

_____
R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB# 102345)
COURTNEY M. WILLIAMS (MSB# 102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
129B South President Street (39201)
Jackson, Mississippi  39225-3785

**EXHIBIT A**

 CT Corporation

**Service of Process Transmittal**
03/13/2018
CT Log Number 532961555

**TO:**  John Fick
Vanguard Health Care
9020 Overlook Blvd Ste 202
Brentwood, TN 37027-2755

**RE:**  **Process Served in Mississippi**

**FOR:**  West Mississippi Management Associates, LLC  (Domestic State: TN)

---

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | ROY JAMES, INDIVIDUALLY, AND ON BEHALF OF AND FOR THE USE AND BENEFIT OF THE WRONGFUL DEATH BENEFICIARIES OF GWENDOLYN SPENCER, Pltf. vs. SHADY LAWN, LLC, etc., et al., Dfts. // To: West Mississippi Management Associates, LLC |
| **DOCUMENT(S) SERVED:** | Summons, Complaint, Exhibit(s) |
| **COURT/AGENCY:** | Warren County Circuit Court, MS<br>Case # 75CI118CV00016 |
| **NATURE OF ACTION:** | Wrongful Death - Failure to Maintain Premises in a Safe Condition - 12/30/2015 |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Flowood, MS |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/13/2018 at 14:00 |
| **JURISDICTION SERVED :** | Mississippi |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days of the date of delivery |
| **ATTORNEY(S) / SENDER(S):** | R. PAUL WILLIAMS, III<br>WILLIAMS NEWMAN WILLIAMS, PLLC<br>129 B. SOUTH PRESIDENT ST. (39201)<br>Post Office Box 23785<br>Jackson, MS 39225-3785<br>601-949-5080 |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780109969414 |
| | Image SOP |
| | Email Notification, John Fick  jtfick@vanguardhc.com |
| **SIGNED:**<br>**ADDRESS:** | C T Corporation System<br>645 Lakeland East Drive<br>Suite 101<br>Flowood, MS 39232 |
| **TELEPHONE:** | 214-932-3601 |

Page 1 of  1 / HS

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

**ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER**                                      **PLAINTIFF**

**VS.**                                    CAUSE NO.: _18, 0016-CI_

**SHADY LAWN, LLC d/b/a SHADY LAWN
HEALTH ND REHABILIATION CENTER,
WEST MISSISSIPPI MANAGEMENT
ASSOCIATES, LLC, UNIDENTIFIED ENTITIES
1-10, AND JOHN DOES 1-10 (as to the SHADY
LAWN NURSING HOME)**                                  **DEFENDANTS**

## S U M M O N S

TO ANY LAWFUL OFFICER AUTHORIZED TO SERVE PROCESS:
YOU ARE HEREBY COMMANDED TO SUMMON:

> West Mississippi Management Associates, LLC c/o
> *C. T. Corporation System – Registered Agent*
> 645 Lakeland Drive East Dr., Ste 101
> Flowood, Ms 39232

## NOTICE TO DEFENDANT

    THE COMPLAINT WHICH IS ATTACHED TO THIS SUMMONS IS IMPORTANT AND YOU MUST TAKE IMMEDIATE ACTION TO PROTECT YOUR RIGHTS BY FILING YOUR ANSWER AS PROVIDED BY LAW AND/OR THE MISSISSIPPI RULES OF CIVIL PROCEDURE.

    You are required to mail or hand-deliver a copy of a written response to the Complaint to R. PAUL WILLIAMS, III, the attorney for the Plaintiff, whose post office address is Post Office Box 23785, Jackson, Mississippi, 39225, and whose street address is 129B South President St., Jackson, Mississippi, 39201. Your response must be mailed or delivered within thirty (30) days from the date of delivery of this Summons and Complaint or a judgment by default will be entered against you for the money or other things demanded in the Complaint.

    You must also file the original of your response with the Clerk of this Court within a reasonable time afterward.

Issued under my hand and the seal of said Court, this the _21_ day of February 2018.



JAN DAIGRE
CIRCUIT CLERK

BY: _____, D.C.

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB# 102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
Post Office Box 23785
Jackson, Mississippi 39225
Tel:    (601) 949-5080
Fax:    (601) 949-3358

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER
                                     **PLAINTIFF**

VS.                                   **CAUSE NO.:** _18, 0016 -CI_

SHADY LAWN, LLC d/b/a SHADY LAWN
HEALTH ND REHABILIATION CENTER,
WEST MISSISSIPPI MANAGEMENT
ASSOCIATES, LLC, UNIDENTIFIED ENTITIES
1-10, AND JOHN DOES 1-10 (as to the SHADY
LAWN NURSING HOME)                        **DEFENDANTS**

### COMPLAINT

### JURY TRIAL REQUESTED

COMES NOW, the Plaintiff, Roy James, Individually, and on behalf of and for the use

and benefit of the wrongful death beneficiaries of Gwendolyn Spencer, and for her causes of

action against Defendants, states:

### I.    PARTIES

1.01    Roy James is the surviving son of Gwendolyn Spencer, deceased, and brings this

action individually, and on behalf of and for the use and benefit of the wrongful death

beneficiaries of Gwendolyn Spencer, and pursuant to Mississippi law.

1.02    Gwendolyn Spencer was a resident of Shady Lawn, a skilled nursing facility

located at 60 Shady Lawn Place, Vicksburg, MS 39180 from on or about December 2013 until

December 2015.

1.03    Defendant, Shady Lawn, LLC d/b/a Shady Lawn Health and Rehabilitation

Center (hereinafter "Shady Lawn" or "Nursing Home Defendants" or "Shady Lawn Defendants")

**FILED**

FEB 27 2018

Case: 75CI1:18-cv-00016    Document #: 1    Filed: 02/27/2018    JAN ayeANDDAZRA CIRCUIT CLERK

BY_____ D.C.

is a business operating in the state of Mississippi with its principal place of business located in

Warren County, Mississippi, and that may be served with process to its registered agent, C.T.

Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232, or a location

where said agent may be found. Shady Lawn was, and remains, a corporation engaged in the

custodial care of elderly, helpless individuals who are chronically infirm, mentally impaired,

and/or in need of nursing care and treatment at Shady Lawn.

      1.04    Defendant, West Mississippi Management Associates, LLC. (hereinafter "West

Mississippi Management" or "Nursing Home Defendants" or "Shady Lawn Defendants") is a

business operating in the state of Mississippi and that may be served with process to its

registered agent, C.T. Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS

39232, or a location where said agent may be found.

      1.05    Separate Defendants John Does 1 through 10 are individuals whom Plaintiff is

currently unable to identify despite diligent efforts. Said Defendants are named pursuant to

Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise

tortious with respect to the care and treatment of, or in the staffing, supervision, administration,

and direction of the care and treatment of, Gwendolyn Spencer, during her residency at Shady

Lawn. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts

and/or omissions or others with respect to the care and treatment of Gwendolyn Spencer during

her residency at Shady Lawn.

      1.06    Separate Defendants Unidentified Entities 1 through 10 are entities whom

Plaintiff is currently unable to identify despite diligent efforts. Defendants are named pursuant

to Miss. R. Civ. P. 9(h), insofar as their acts and/or omissions were negligent and/or otherwise

tortious with respect to the care and treatment of Gwendolyn Spencer during her residency at

Shady Lawn. Alternatively, Defendants are liable for the negligent and/or otherwise tortious acts and/or omissions of others with respect to the care and treatment of Gwendolyn Spencer during her residency at Shady Lawn.

    1.07    At all times material hereto, Defendants owned, operated and/or controlled Shady Lawn. The actions of each of the Defendants' servants, agents and employees as set forth herein, are imputed to the Shady Lawn Defendants, John Does 1 through 10, and Unidentified Entities 1 through 10.

## II.    JURISDICTION AND VENUE

    2.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-1.07 as if set forth herein.

    2.02    Jurisdiction and venue are proper in Warren County, Mississippi, in that a substantial alleged act or omission occurred in Warren County, Mississippi and at the time of her death, Ms. Spencer resided in Warren County, Mississippi.

## III.    FACTUAL SUMMARY

    3.01    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-2.02 as if set forth herein. Further, Plaintiff has attached the Certificate of Expert Consultation as **Exhibit "A"**.

    3.02    Ms. Spencer began her residency with the Shady Lawn Defendants on or around December 2013 through on or about December 2015. That upon admission to Defendants facility, Ms. Spencer was of unsound mind and incapable of managing the ordinary affairs of her life. Ms. Spencer continued to be of unsound mind until her death. Ms. Spencer died as a result of the injuries she suffered at Defendant's facility. That throughout said residency, the Facility, including any of their staff or other personnel, failed to possess and exercise that degree of care,

diligence, and skill as it ordinarily possessed and exercised by minimally competent and reasonably diligent, skillful, careful and prudent nursing homes, and their staff or other personnel.   Ms. Spencer suffered dehydration, contracted numerous infections, medical conditions, pressure sores and/or skin tears, bruises, injuries, abuse, unexplained injuries, had an unkept appearance, suffered disfigurement, poor hygiene, mental decline, and she suffered other injuries, and ultimately death, as a result of the improper care and treatment provided to her by the Facility and/or their staff or other personnel throughout her residency with the Facility.  Ms. Spencer suffered many incidents, abuse, improper care, and injuries, including but not limited to the following:

> 1.  As a result of The Facility's negligence Ms. Spencer developed severe Stage IV pressure injuries. The facility failed to provide Ms. Spencer with adequate pressure relief during her residency.
>
> 2.  Ms. Spencer required hospitalizations as a result of the negligence and inaction of the Facility.
>
> 3.  The Facility failed to meet the standard of care in regard to the care rendered Ms. Spencer.
>
> 4.  Ms. Spencer suffered unexplained injuries and other skin problems.
>
> 5.  Ms. Spencer received poor personal care while she was a resident of The Facility.
>
> 6.  Ms. Spencer received poor hygienic care while she was a resident of The Facility.
>
> 7.  Ms. Spencer suffered skin breakdown as a result of the Facility's negligence.
>
> 8.  Ms. Spencer suffered infections and dehydration as a result of the Facility's negligence.
>
> 9.  As a result of the individual and/or combined negligence, gross negligence, reckless, and willful/wanton actions of the Facility and/or their staff or other personnel, Ms. Spencer suffered extensive injuries and damages, including loss of her dignity, great pain and suffering, disfigurement, mental anguish, and ultimately death. The Facility and/or their staff or other personnel failed to meet the appropriate

standard of care with regard to the care and treatment provided to Ms. Spencer throughout her residency with the Facility.

The conditions reflected herein are readily apparent based on a review of Ms. Spencer's chart. As a result of the individual and/or combined negligence, gross negligence, reckless, and willful/wanton actions of the Defendants and/or their staff or other personnel, Ms. Spencer suffered extensive injuries and damages, including loss of her dignity, great pain and suffering, disfigurement, wounds, infections, mental anguish, and ultimately death. The Facility and/or their staff or other personnel failed to meet the appropriate standard of care with regard to the care and treatment provided to Ms. Spencer throughout her residency with the Facility.

     3.03    Defendants were well aware of Ms. Spencer's medical condition and the care that she required when they represented that they could adequately care for her needs.

     3.04    At all times material to this lawsuit, Defendants held themselves out as being:

        a.    Skilled in the performance of nursing, rehabilitative and other medical support services;

        b.    Properly staffed, supervised, and equipped to meet the total needs of their nursing home residents;

        c.    Able to specifically meet the total nursing home, medical, and physical therapy needs of Gwendolyn Spencer and other residents like her; and,

        d.    Licensed and complying on a continual basis with all rules, regulations, and standards established for nursing homes, nursing home licensees and nursing home administrators.

     3.05    The Shady Lawn Defendants failed to discharge their obligations of care to Gwendolyn Spencer. As a consequence, thereof, Gwendolyn Spencer suffered catastrophic injuries, disfigurement, extreme pain and suffering, mental anguish, and death. The scope and

severity of the recurrent wrongs inflicted upon Gwendolyn Spencer while under the care of the Defendants accelerated the deterioration of her health and physical condition beyond that caused by the normal aging process and resulted in physical and emotional trauma as described above.

3.06    Ms. Spencer required hospitalizations as a result of the negligence and inaction of the Defendants. Ms. Spencer received poor personal care while she was a resident of the Facility. The charting was infrequent, had gaps, and did not meet the standard of care. All of the above identified injuries, as well as the conduct specified below, caused Gwendolyn Spencer to lose her personal dignity and her death to be preceded by extreme and unnecessary pain, degradation, anguish, and emotional trauma.

3.07    The wrongs complained of herein were of a continuing nature and occurred throughout Gwendolyn Spencer's stay at Defendants' facility.

3.08    Plaintiff alleges that on all of the occasions complained of herein, Gwendolyn Spencer was under the care, supervision, and treatment of the agents and/or employees of Defendants and that the injuries complained of herein were proximately caused by the acts and omissions of Defendants named herein.

3.09    Defendants had vicarious liability for the acts and omissions of all persons or entities under Defendants' control, either directly or indirectly, including their employees, agents, consultants, and independent contractors, whether in-house or outside entities, individuals, agencies, or pools causing or contributing to the injuries of Gwendolyn Spencer.

3.10    Defendants have joint and several liabilities for the actions complained of herein because they consciously and deliberately pursued a common plan or design to commit the tortious acts described in this Complaint and these Defendants actively took part in such actions.

## COUNT ONE: NEGLIGENCE AGAINST THE SHADY LAWN DEFENDANTS, JOHN DOES 1-10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.11    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01-3.10 as if set forth herein.

3.12    Defendants owed a duty to residents, including Gwendolyn Spencer, to provide adequate and appropriate custodial care and supervision, which a reasonably careful person would provide under similar circumstances.

3.13    Defendants owed a duty to residents, including Gwendolyn Spencer, to exercise reasonable care in providing care and services in a safe and beneficial manner.

3.14    Defendants breached this duty by failing to deliver care and services that a reasonably careful person would have provided under similar circumstances and by failing to prevent the mistreatment, abuse and neglect of Gwendolyn Spencer.

3.15    The negligence of Defendants includes, but is not limited to, the following acts and omissions:

a.    The failure to provide Gwendolyn Spencer with adequate fluid intake to prevent dehydration;

b.    The failure to provide adequate nutrition, prevent weight loss, and provide appropriate nutritional interventions;

c.    The failure to provide Gwendolyn Spencer with adequate and appropriate hygiene care, including the failure to bathe her daily after each incontinent episode so as to prevent urine and fecal contact with skin for an extended period of time;

d.    The failure to provide and ensure that Gwendolyn Spencer received adequate hygiene and sanitary care to prevent infection;

e.    The failure to provide adequate skin care, including turning and repositioning of Gwendolyn Spencer in order to provide pressure relief so as to prevent the

formation of skin tears and pressure sores on her body;

f.    The failure to provide the minimum number of staff necessary to assist the residents, including Gwendolyn Spencer, with their needs;

g.    The failure to provide adequate supervision for Gwendolyn Spencer to protect her from unexplained injuries within the facility;

h.    The failure to provide appropriate therapies to avoid Ms. Spencer's preventable cognitive and social decline;

i.    The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Gwendolyn Spencer's condition;

j.    The failure to provide sufficient numbers of qualified nursing personnel to meet the total needs of Gwendolyn Spencer;

k.    The failure to increase the number of nursing personnel to ensure that Gwendolyn Spencer:

   1.    Received timely and accurate care assessments;

   2.    Received prescribed treatment, medication, and diet;

   3.    Received necessary supervision; and

   4.    Received timely nursing and medical intervention due to a significant change in condition.

l.    The failure to provide nursing personnel sufficient in number to ensure that Gwendolyn Spencer attained and maintained her highest practicable level of physical, mental and psychosocial well-being;

m.    The failure to provide adequate supervision to the nursing staff so as to ensure that Gwendolyn Spencer received adequate and proper nutrition, fluids,

therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Gwendolyn Spencer;

n.    The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure that Gwendolyn Spencer received appropriate nursing care, in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

o.    The failure to provide a nursing staff that was properly staffed, qualified, and trained;

p.    The failure to adopt adequate guidelines; policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility of any interested person;

q.    The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

r.    The failure to provide care, treatment, and medication in accordance with physician's orders;

s.    The failure to provide a safe environment;

t.    The failure to maintain medical records on Gwendolyn Spencer in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1.    The diagnosis of Gwendolyn Spencer;

2.    The treatment of Gwendolyn Spencer; and

3.    The assessment and establishment of appropriate care plans of care and treatment; and

u.    The failure to protect Gwendolyn Spencer from harm within the facility.

v.    The failure to provide proper pressure sore relief, interventions, and prevention.

3.16    A reasonably careful nursing home operating under similar circumstances would foresee that the failure to provide the ordinary care listed above would result in devastating injuries to Gwendolyn Spencer.

3.17    As a direct and proximate result of the negligence of Defendants as set out above, Gwendolyn Spencer suffered injuries, as set forth herein all of which required hospitalization and medical treatment, and all of which required Ms. Spencer to incur significant hospital and medical expenses.

3.18    WHEREFORE, based on such conduct of Separate Defendants as set forth above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT TWO: MEDICAL MALPRACTICE AGAINST THE SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.19    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01-3.18, as if fully set forth herein.

3.20    Separate Defendants owed a duty to residents, including Gwendolyn Spencer, to

hire, train, and supervise employees so that such employees delivered care and services to residents in a safe and beneficial manner.

3.21    Separate Defendants owed a duty to residents, including Gwendolyn Spencer, to render care and services as a reasonably prudent and similarly situated nursing home employee would render, including, but not limited to, rendering care and services in a safe and beneficial manner.

3.22    Separate Defendants owed a duty to assist all residents, including Gwendolyn Spencer, in attaining and maintaining the highest level of physical, mental, and psychosocial well-being.

3.23    Separate Defendants failed to meet the standard of care and violated their duty of care to Gwendolyn Spencer through mistreatment, abuse, and neglect.  The medical negligence of these Defendants includes, but is not limited to, the following acts and omissions:

> a.    The failure to provide proper supervision and interventions to prevent Gwendolyn Spencer's existing medical conditions to worsen to the point of becoming life-threatening;
>
> b.    The failure to properly assess Gwendolyn Spencer for the risk of development and progression of skin tears, pressure sores, injuries, and infections;
>
> c.    The failure to develop, implement, and update an adequate and appropriate resident care plan to meet the needs of Gwendolyn Spencer;
>
> d.    The failure to monitor and document significant changes in Gwendolyn Spencer's condition;
>
> e.    The failure to provide and ensure adequate nursing care plan revisions and

modifications as the needs of Gwendolyn Spencer changed;

f.　　The failure to implement and ensure that an adequate nursing care plan for Gwendolyn Spencer was followed by nursing personnel;

g.　　The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

h.　　The failure to provide Gwendolyn Spencer with adequate and appropriate observation and examination following an injury so as to timely and adequately provide appropriate emergency medical care;

i.　　The failure to provide care, treatment, and medication in accordance with physician's orders;

j.　　The failure to properly and timely notify a physician of significant changes in Gwendolyn Spencer's physical condition;

k.　　The failure to maintain medical records on Gwendolyn Spencer in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

　　1.　　The diagnosis of Gwendolyn Spencer;

　　2.　　The treatment of Gwendolyn Spencer; and

　　3.　　The assessment and establishment of appropriate care plans of care and treatment.

l.　　The failure to adequately and appropriately monitor Gwendolyn Spencer and recognize significant changes in her health status;

m.　　The failure to respond to significant signs and symptoms of change in the

condition of Gwendolyn Spencer;

n.  The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nurse assistants, and medical aides to meet the total needs of Gwendolyn Spencer;

o.  The failure to increase the number of nursing personnel to ensure that Gwendolyn Spencer:

1. received timely and accurate assessments;

2. received prescribed treatment, medical and diet;

3. received necessary supervision;

4. received timely nursing and medical intervention due to a significant change in condition.

p.  The failure to provide nursing personnel sufficient in number to provide proper treatment and assessment of Gwendolyn Spencer and other residents in order to protect Gwendolyn Spencer's skin integrity. and to prevent the formation of skin tears, pressure sores, lesions, rashes, bruises, contractures, and infections;

q.  The failure to respond to significant signs and symptoms of change in the condition of Gwendolyn Spencer;

r.  The failure to provide nursing personnel sufficient in number to ensure that Gwendolyn Spencer attained and maintained her highest level of physical, mental, and psychosocial well-being;

s.  The failure to provide adequate supervision to the nursing staff so as to ensure that Gwendolyn Spencer received adequate and proper nutrition,

fluids, therapeutic diet, sanitary care treatments, medications, safety, and skin care to prevent injuries at the facility;

t.      The failure to adequately assess, evaluate, and supervise nursing personnel so as to ensure Gwendolyn Spencer received appropriate nursing care, in accordance with Defendants' policy and procedures manual, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Office of Licensing and Certification;

u.      The failure to provide a nursing staff that was properly staffed, qualified and trained;

v.      The failure to provide and ensure an adequate nursing care plan as well as revisions based on the needs of Gwendolyn Spencer;

w.      The failure to implement and ensure that an adequate nursing care plan for Gwendolyn Spencer was followed by nursing personnel;

x.      The failure to adopt adequate guidelines, policies, and procedures for documenting, maintaining files, investigating, and responding to any complaint regarding the quantity of resident care, the quality of resident care, or misconduct by employees, irrespective of whether such complaint derived from a state survey agency, a resident of said facility, an employee of the facility or any interested person;

y.      The failure to take reasonable steps to prevent, eliminate, and correct deficiencies and problems in resident care;

z.      The failure to properly assess Gwendolyn Spencer for the risk of injury

and development of bruises, pressure sores, skin tears, lesions, and infection;

aa.    The failure to provide proper devices to Gwendolyn Spencer;

bb.    The failure to provide Gwendolyn Spencer with adequate and appropriate skin care, including timely dressing changes, so as to prevent the aggravation and deterioration of pressure sores, skin tears and/or lesions on her body;

cc.    The failure to provide Gwendolyn Spencer with adequate and appropriate observation and examination so as to timely and adequately intervene to prevent the development, aggravation and progression of bruises, pressure sores, skin tears, and infection;

dd.    The failure to provide Gwendolyn Spencer with adequate and appropriate nursing care, treatments, and medication for skin tears after development over the body of Gwendolyn Spencer;

ee.    The failure to provide Gwendolyn Spencer with adequate and appropriate nursing care, treatments, and medication for infection;

ff.    The failure to provide care, treatment, and medication in accordance with physician's orders;

gg.    The failure to properly and timely notify Gwendolyn Spencer's attending physician of significant changes in Gwendolyn Spencer's physical condition, to wit: injuries, and persistent, unresolved problems relating to the care and physical condition of Gwendolyn Spencer resulting in unnecessary pain, agony, and suffering on the part of Gwendolyn Spencer;

hh.   The failure to provide Gwendolyn Spencer with adequate and appropriate assessment for fluid management to prevent dehydration;

ii.   The failure to maintain an adequate and appropriate fluid maintenance program;

jj.   The failure to ensure that Gwendolyn Spencer received adequate assessment of her nutritional needs;

kk.   The failure to maintain medical records on Gwendolyn Spencer in accordance with acceptable professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

1.   the diagnosis of Gwendolyn Spencer;

2.   the treatment of Gwendolyn Spencer; and

3.   the assessment and establishment of appropriate care plans of care and treatment;

ll.   The failure to adequately and appropriately monitor Gwendolyn Spencer and recognize significant changes in her health status; and

mm.   The failure to properly notify the family of Gwendolyn Spencer of significant changes in her health status.

3.24   A reasonably prudent nursing home operating under the same or similar conditions, would not have failed to provide the care listed in the above paragraphs. Each of the foregoing acts of medical negligence on the part of Defendants was a proximate cause of Gwendolyn Spencer's injuries and death. Gwendolyn Spencer's injuries and death were foreseeable to these Defendants.

3.25    Defendants' conduct in breaching the duties owed to Gwendolyn Spencer was grossly negligent, willful, wanton, malicious and reckless.

3.26    As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Gwendolyn Spencer suffered injuries and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment.  As a result, Ms. Spencer incurred significant medical expenses.

3.27    WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT THREE: MALICE, AND/OR GROSS NEGLIGENCE WHICH EVIDENCES A WILLFUL, WANTON, OR RECKLESS DISREGARD FOR THE SAFETY OF GWENDOLYN SPENCER AGAINST SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.28    Plaintiff re-alleges and incorporates the allegations in paragraphs 1.01- 3.27, as if fully set forth herein.

3.29    The longevity, scope and severity of Defendants' failures and actions constitute malice, and/or gross negligence that evidences a willful, wanton or reckless disregard for the safety of others, including Gwendolyn Spencer.  Specifically, such conduct was undertaken by Defendants without regard to the health and safety consequences to those residents, such as Gwendolyn Spencer, entrusted to their care. Moreover, such conduct evidences little regard for their duties of care, good faith, and fidelity owed to Ms. Spencer.

3.30    The malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, including Gwendolyn Spencer, includes, but is not

limited to, acts and omissions as alleged in the above paragraphs, as well as the following:

1.    The failure to provide Gwendolyn Spencer with necessary and adequate continence care and assistance with toileting;

2.    The failure to provide Gwendolyn Spencer with adequate and appropriate hygiene care;

3.    The failure to provide and ensure that Gwendolyn Spencer received adequate hygiene and sanitary care;

4.    The failure to provide clean bed linens to Gwendolyn Spencer as needed to prevent urine and fecal contact for an extended period of time;

5.    The failure to provide adequate devices and interventions to Gwendolyn Spencer;

6.    The failure to provide even the minimum number of staff necessary to assist the residents with their needs;

7.    The failure to provide adequate supervision for Gwendolyn Spencer to prevent falls and unexplained injuries within the facility;

8.    The failure to provide proper custodial care, supervision, interventions and observation to prevent Gwendolyn Spencer's existing medical conditions and injuries to worsen to the point of becoming life-threatening;

9.    The failure to properly assess Gwendolyn Spencer for the risk of development and worsening of skin conditions;

10.    The failure to maintain appropriate records, including the obvious failure to monitor and document significant changes in Gwendolyn Spencer's condition;

11.   The failure to protect Gwendolyn Spencer from receiving unexplained injuries and falls,

12.   The failure to provide sufficient numbers of qualified personnel, including nurses, licensed practical nurses, certified nursing assistants, and medication aides (nursing personnel) to meet the total needs of Gwendolyn Spencer;

13.   The failure to increase the number of personnel to ensure that Gwendolyn Spencer:

    I.    Received timely and accurate care assessments;

    II.   Received prescribed treatment, medication, and diet;

    III.  Received necessary supervision; and

    IV.   Received timely intervention due to a significant change in condition.

14.   The failure to provide nursing personnel sufficient in number to ensure that Gwendolyn Spencer attained and maintained her highest level of physical, mental and psychosocial well-being;

15.   The failure to provide adequate supervision to the nursing staff so as to ensure that Gwendolyn Spencer received adequate and proper nutrition, fluids, therapeutic diet, sanitary care treatments and medications, and sufficient nursing observation and examination of the responses, symptoms, and progress in the physical condition of Ms. Spencer;

16.   The failure to adequately assess, evaluate and supervise nursing personnel so as to ensure that Gwendolyn Spencer received appropriate nursing care,

in accordance with Defendants' policies and procedures, and the statutorily mandated regulations implemented by the Mississippi Department of Health and its agents, including the Division of Health Facilities Licensure and Certification;

17.   The failure to provide nursing staff that was properly staffed, qualified, and trained;

18    The failure to provide and ensure an adequate nursing care plan based on the needs of Gwendolyn Spencer;

19.   The failure to provide and ensure adequate nursing care plan revisions and modifications as the needs of Gwendolyn Spencer changed;

20.   The failure to implement and ensure that an adequate nursing care plan for Gwendolyn Spencer was followed by nursing personnel;

21.   The failure to adopt adequate guidelines, policies and procedures for documenting; maintaining files; investigating and responding to any complaint regarding the quality of resident care or misconduct by employees – irrespective of whether such complaint derived from a state survey agency, a resident of the facility, an employee of the facility or any interested person;

22.   The failure to take reasonable steps to prevent, eliminate and correct deficiencies and problems in resident care;

23.   The failure to properly and timely notify Gwendolyn Spencer's attending physician or hospital of significant changes in Ms. Spencer's physical condition, specifically: skin tears, pressure sores, infections, bruises,

head injuries, unexplained injuries, malnutrition, dehydration, poor hygiene, disfigurement, and persistent and unresolved problems relating to the care and physical condition of Gwendolyn Spencer resulting in her pain, agony, and suffering;

24.     The failure to provide a safe environment;

25.     The failure to maintain medical records on Gwendolyn Spencer in accordance with accepted professional standards and practices that are complete, accurately documented, readily accessible, and systematically organized with respect to:

        i.  The diagnosis of Gwendolyn Spencer;

        ii. The treatment of Gwendolyn Spencer; and

        iii. The assessment and establishment of appropriate care plans of care and treatment.

26.     The failure to adequately and appropriately monitor Gwendolyn Spencer and recognize significant changes in her health status;

27.     The failure to protect Gwendolyn Spencer from harm within the facility;

28.     The failure to respond to significant signs and symptoms of change in the condition of Gwendolyn Spencer;

29.     The failure to provide Gwendolyn Spencer with appropriate skin care;

30.     The failure to provide Gwendolyn Spencer with adequate and appropriate observation and examination for skin breakdown.

3.31   As a direct and proximate result of the above cited malice, and/or gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others,

including Gwendolyn Spencer, she suffered injuries as set herein, all of which required Ms. Spencer to incur significant medical expenses as well as suffer extreme pain, suffering, mental anguish, embarrassment, and fright, all of which required hospitalization and medical treatment, and all of which resulted in death.

3.32    WHEREFORE, based on such conduct of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damage against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, and humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

### COUNT FOUR: BREACH OF FIDUCIARY DUTY AGAINST THE SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.33    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.32 as if fully set forth herein.

3.34    Because of her mental and physical infirmities, Gwendolyn Spencer was particularly dependent upon Defendants, their employees and agents for her daily care and well-being. Because of the nature of this dependency, the representations of Defendants that they could and would provide necessary care and the dominant influence Defendants exhorted over Gwendolyn Spencer on a daily basis while she resided at Shady Lawn. Ms. Spencer and her family held in all Defendants a special confidence and trust. Defendants accepted this special confidence and trust by admitting Gwendolyn Spencer to their facilities and by determining the level of care to be provided to Ms. Spencer.

3.35    Gwendolyn Spencer and her family relied upon Defendants' superior knowledge, skill, and abilities, which they held themselves out to possess. Gwendolyn Spencer and her

family also relied on the Defendants to provide care for Gwendolyn Spencer who, because of her age and infirmities, was not able to care for herself.

3.36   By virtue of the nature of the services Defendants provide to Gwendolyn Spencer, the special relationship that existed between Defendants and Ms. Spencer, the extortion of influence Defendants had over Ms. Spencer, the huge disparity of power and unequal bargaining position existing between Defendants and Ms. Spencer, as well as all of the other surrounding circumstances, including but not limited to, Gwendolyn Spencer's mental and physical infirmities, Defendants occupied a position of trust and confidence toward Ms. Spencer that required among other things fidelity, loyalty, good faith, and fair dealing by the Defendants.

3.37   By accepting payment for services and care that was not provided to Gwendolyn Spencer and concealing and failing to disclose the abuse and neglect of Ms. Spencer, Defendants breached their confidential and fiduciary duties, namely, the duties of good faith and fair dealing, to Ms. Spencer by failing to provide the appropriate level of care and services to which she was entitled.

3.38   As a proximate cause of the foregoing breaches of duty by Separate Defendants, Gwendolyn Spencer suffered injuries as set forth herein.

3.39   WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Plaintiff also seeks the imposition of a constructive trust on all wrongfully profits and proceeds arising out of Separate Defendants' breach of fiduciary duty to Gwendolyn Spencer.

## COUNT FIVE: STATUTORY SURVIVAL CLAIM AGAINST
## THE SHADY LAWN DEFENDANTS, JOHN DOES 1-THROUGH 10, AND
## UNIDENTIFIED ENTITIES 1 THROUGH 10

3.40    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.39, as if fully set forth herein.

3.41    As a direct and proximate result of the negligence, malice, and/or gross negligence that evidenced and willful, wanton or reckless disregard for the safety of others, including Gwendolyn Spencer, Ms. Spencer suffered injuries and death as set forth herein, all of which caused physical pain and suffering, mental anguish, humiliation, embarrassment, disfigurement, fright, and emotional distress.   As a result, Gwendolyn Spencer incurred significant hospital and medical expenses.

3.42    As a direct, natural and proximate result of the negligence, malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Gwendolyn Spencer died on December 30, 2015, thereby incurring funeral, burial, and other related expenses.

3.43    WHEREFORE, based on and arising out of the conduct of Separate Defendants as set out above, Plaintiff asserted a claim for judgment for compensatory and punitive damages for Gwendolyn Spencer's death, including, but not limited to medical expenses, costs of administration of Gwendolyn Spencer's estate, and other related expenses incurred as a result of Separate Defendant's wrongful acts and omissions, as well as damages for physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT SIX: STATUTORY WRONGFUL DEATH CLAIM AGAINST
## SHADY LAWN DEFENDANTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED
## ENTITIES 1 THROUGH 10

3.44    Plaintiff re-alleges and incorporates the allegations in paragraph 1.01 through 3.43, as if fully set forth herein.

3.45    As a direct and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, including Gwendolyn Spencer, Defendants caused the death of Gwendolyn Spencer.

3.46    As a direct, natural and proximate result of the negligence, malice, and/or gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, Gwendolyn Spencer suffered extreme pain, suffering, mental anguish, embarrassment, disfigurement, and fright, all of which required hospitalization and medical treatment. Gwendolyn Spencer died on December 30, 2015, thereby incurring funeral, burial and other related expenses.

3.47    As a result of the death of Gwendolyn Spencer, the wrongful death beneficiaries suffered loss of consortium, attention, guidance, care, protection, training, companionship, compassion, affection, and love.

3.48    WHEREFORE, based on such conduct of Separate Defendants as set out above, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants including but not limited to Gwendolyn Spencer's physical pain and suffering, mental anguish, disfigurement, and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law. Additionally, based on such conduct, Plaintiff asserts a claim for judgment for all compensatory and punitive damages against Separate Defendants based on the damages sustained by the wrongful death beneficiaries as a result of the loss of a personal relationship with Gwendolyn Spencer including but not limited to loss of support, companionship, consortium, attention, guidance, care, protection,

training, compassion, affection, and love, in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled.

### COUNT SEVEN: INDIVIDUAL LIABILITY AND LIABILITY PURSUANT TO PIERCING THE CORPORATE VEIL AGAINST WEST MISSISSIPPI MANAGEMENT ASSOCIATES, LLC, AND ANY OF THE OTHER OWNERS OR OPERATORS OF SHADY LAWN NAMED IN THIS COMPLAINT, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.49    Plaintiff re-alleges and incorporates that allegations in paragraphs 1.01-3.48, as if fully set forth herein.

3.50    Separate Defendants, West Mississippi Management, John Does 1-10, and unidentified entities 1-10 owned and operated Shady Lawn. These named Defendants as corporate officers, owners, and operators, directly participated and/or authorized the commission of the negligent, grossly negligent, and fraudulent acts as articulated above, and are thus, personally liable for the torts named herein. These named Defendants allocated the financial resources in such a way as to create inadequate staffing, supervision, and supplies. As articulated above, these inadequacies caused and contributed to Ms. Spencer's injuries and death.

3.51    These Defendants used Shady Lawn to perpetuate a fraud upon Plaintiff. Defendants were intent on obtaining Plaintiff's funds for their own personal use with no intention of performing their duties and used Shady Lawn to improperly shield themselves from personal liability. Shady Lawn was not properly capitalized, was not properly staffed, and did not have adequate supplies. Said Defendants abused the corporate entities of Shady Lawn to perpetuate fraud and evade contractual and tort responsibility.

3.52    Defendants intentionally engaged in common law fraud and knowingly concealed or failed to disclose material facts, even though Defendants knew or reasonably should have known, that because of the surrounding circumstances that Gwendolyn Spencer and her family

were ignorant of the articulated material facts and did not have an equal opportunity to discover the truth.   Specifically, Defendants either personally or through their agents or employees misrepresented the material facts either by omission or affirmative statements that they were willing to, and would, provide the proper care, treatment and services to Gwendolyn Spencer, even though Defendants know that they would provide as little care and treatment and services as possible in order to maximize Defendants' profits at the expense of Gwendolyn Spencer. Further, Defendants made the misrepresentations with the intent to induce Gwendolyn Spencer and her family to take some action: specifically, to admit and not remove Gwendolyn Spencer from Defendants' facility, by concealing or failing to disclose the material facts that there was an epidemic of resident harm and injury, as well as a practice of utilizing insufficient numbers of nursing aides who were not qualified to render care or services in accordance with the law during Mr. Gwendolyn Spencer's residency.   As a proximate cause of Defendants' concealment and failure to disclose, these adverse material facts, Gwendolyn Spencer suffered injuries as set forth above.

3.53    Said Defendants are liable as owners and operators of Shady Lawn for their negligent acts or omissions in the care of the residents, including Ms. Spencer.   The corporate identity of Shady Lawn should be disregarded where said Defendants used the corporation to perpetrate a fraud and as a mere instrumentality of Defendants.   Said Defendants were de facto owners and operators (through their corporate layering) of Shady Lawn and were negligent and grossly negligent in their operation of Shady Lawn.   Upon information and belief, said Defendants acted to ensure that all of the duties of the administration and agreements with Shady Lawn are carried out and failed in these duties.   Upon information and belief, said Defendants oversee facilities in Mississippi as well as handle resident care issues. These activities are the

very wrongs in which Plaintiff asserts a claim against, alleging short-staffing and claims of failure to properly staff, supervise, and provide adequate services.  Said Defendants are liable, not in their capacity as corporate officers or directors, but for their own individual wrongdoing.

3.54    Said Defendants are liable as owners and operators of Shady Lawn for their negligent acts or omissions in the care of the residents, including Ms. Spencer. The corporate identity of Shady Lawn should be disregarded where said Defendants used the corporation to perpetrate a fraud and as a mere instrumentality of Defendants. Said Defendants were de facto owners and operators (through their corporate layering) of Shady Lawn and were negligent and grossly negligent in their operation of Shady Lawn. Upon information and belief, said Defendants acted to ensure that all of the duties of the administration and agreements with Shady Lawn are carried out and failed in these duties.  Upon information and belief, said Defendants oversee facilities in Mississippi as well as handle resident care issues. These activities are the very wrongs in which Plaintiff asserts a claim against, alleging short-staffing and claims of failure to properly staff, supervise, and provide adequate services.  Said Defendants are liable, not in their capacity as corporate officers or directors, but for their own individual wrongdoing.

3.55    Defendants are further liable for their provision of nurse consultants to the facility. Defendants had in place a system of providing nurse consultants to the nursing home facilities. The nurse consultants provided by Defendants directly affected patient care at Shady Lawn. Upon information and belief, nurse consultants are hired by West Mississippi Management, and paid by said entity(s). The facility is supervised by West Mississippi Management, and sent by said entity(s) to visit the nursing homes, including Shady Lawn. The result of the failure of West Mississippi Management, and Shady Lawn's nurse consultants to perform their job, including conduct adequate quality assurance audits, caused the residents of

Shady Lawn, including Ms. Spencer, to be harmed due to the failures of the nursing staff.

3.56    WHEREFORE, based on such conduct of Separate Defendants as set of above, Plaintiff asserts a claim for judgment for compensatory and punitive damages against Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement, and death in an amount to be determined by the jury, plus costs and all relief to which Plaintiff is entitled by law.

## COUNT EIGHT: NEGLIGENCE, NEGLIGENT SUPERVISION, AND INADEQUATE CONTROL OF SHADY LAWN BY WEST MISSISSIPPI MANAGEMENT, AND THEIR AGENTS, JOHN DOES 1 THROUGH 10, AND UNIDENTIFIED ENTITIES 1 THROUGH 10

3.57    Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01 through 3.56 as if fully set forth herein.

3.58    Defendants West Mississippi Management and their agents and officers, John Does 1-10, and Unidentified Entities 1 through 10 were the owners, operators, service providers, and managers of Shady Lawn during the residency of Ms. Spencer.  Upon information and belief, Defendants' authority is clear through their actions as well as their agreements.  By becoming operators and managers, Defendants willingly and voluntarily assumed the ultimate responsibility to operate their nursing home in a manner that would ensure that each resident, including Ms. Spencer, met her highest practicable physical, mental and psychosocial well-being.  Further, West Mississippi Management, were negligent in their provision of support services to Shady Lawn.  West Mississippi Management were charged with properly supervising both their employees and agents, as well as Shady Lawn's employees and agents.

3.59    West Mississippi Management, failed in its operation, supervision and control of Shady Lawn's employees and agents.  The Shady Lawn facility operated in a negligent manner both a global and a daily basis at the hands and direction of West Mississippi Management.

Upon information and belief, West Mississippi Management were routinely involved in the decision-making, supervision, and control of Shady Lawn employees. Upon information and belief, actions taken by West Mississippi Management in providing nurse consultants, as well as others in supervisory roles at Shady Lawn, failed to conform to the standard of care. West Mississippi Management, by and through this supervision and support, were involved in the management, care and treatment of residents at the Facility in general, and to Ms. Spencer, in particular, and failed in these actions.

3.60 West Mississippi Management had in place a system of providing nurse consultants to the nursing home facilities, including Shady Lawn. Nurse consultants are hired by West Mississippi Management, paid by them, supervised by them and sent by them to visit the nursing homes, including Shady Lawn. Nurse Consultants provided assistance in identifying interventions that **should** be in place. Upon information and belief, nurse consultants offered training, staffing resources, routine visits, and guidance and meetings with leadership, If the Nursing Home Defendants' nurse consultant had been doing her job, the chart reviews and her visits would have demonstrated deficiencies and, at the very least, it would have been discovered that Ms. Spencer had improper and/or ineffective interventions in place. If the nurse consultant had reviewed Ms. Spencer's records, it would have become apparent that something was very wrong. Because of the failures of the nurse consultants to discover, through their responsibility to review charts, the failures listed herein, Ms. Spencer was harmed and died. The nurse consultant breached the standard of care as to monitoring the care and treatment of Ms. Spencer. The result of the failure of West Mississippi Management's nurse consultants to conduct adequate quality assurance audits caused the residents of Shady Lawn, including Ms. Spencer, to be harmed due to the failures of the nursing staff.

3.61    West Mississippi Management's decisions as to employing sufficient numbers and adequate levels of staffing directly impacted the care provided to residents, including Ms. Spencer.  Upon information and belief, West Mississippi Management also had absolute and complete authority to allocate and/or apportion costs and expenses to Shady Lawn and in such manner as West Mississippi Management may deem necessary or appropriate from time to time. This allocation of costs directly affected the care received by residents, including Ms. Spencer. The allocation of resources or lack thereof at Shady Lawn contributed to Ms. Spencer's injuries as alleged herein.

3.62    West Mississippi Management negligently and improperly directed the care provided to the residents at Shady Lawn.  Upon information and belief, West Mississippi Management committed negligence in regard to decision-making control, committed negligence in regard to who was staffed, how much was staffed, budgeting, directing care through corporate nurses, auditing care provided, providing and implementing policies and procedures, and providing other "support services", among other failures in services.

3.63    Upon information and belief, West Mississippi Management, and their agents were required to be aware of matters occurring at the nursing home and to take affirmative steps to correct problems particularly when those problems could reasonably cause or contribute to an injury to a resident of the facility.

3.64    Upon information and belief, West Mississippi Management, and their agents were charged with creating and implementing proper policies and procedures and training and failed in this endeavor.

3.65    Upon information and belief, West Mississippi Management, and their agents were required to properly supervise the nursing homes they had agreed to provide "support

services" to, including Shady Lawn, and failed to supervise each nursing home in the manner in which a reasonably prudent person similarly situated would and failed to similarly provide adequate support services and take steps to ensure that the nursing home residents, including Ms. Spencer, were receiving adequate and appropriate care.

3.66    Upon information and belief, West Mississippi Management, and their agents failed to timely and adequately review records related to the operation of each nursing home (including a review by nurse consultants and quality assurance personnel) in order to ensure that the residents, including Ms. Spencer, received adequate and appropriate care.

3.67    West Mississippi Management, and their agents failed to ensure that the facility had sufficient numbers of qualified nursing personnel, depending upon the number of residents and the acuity level of the facility.  Such failures resulted in injuries to Ms. Spencer, including falls and injuries, as set forth in the preceding paragraphs.

3.68    West Mississippi Management, and their agents failed to adequately assess, evaluate and supervise nursing personnel so as to ensure that Ms. Spencer received appropriate nursing care, in accordance with Defendants' policies and procedures.

3.69    West Mississippi Management, and their agents failed to provide nursing staff that was properly staffed, qualified, and trained.

3.70    A reasonably prudent company/owner in the position of West Mississippi Management, operating under the same or similar conditions, would not have failed to provide the services, supervision, operation, support and care listed in the above paragraphs. Each of the foregoing acts of negligence on the part of Defendants was a proximate cause of Ms. Spencer's injuries.

3.71    A reasonably careful management company, managerial authority, or service

provider operating under similar circumstances, would foresee that the failure to provide the ordinary care, supervision, operation, support, and services listed above would result in devastating injuries and death to Ms. Spencer.

3.72  Defendants' conduct in breaching the duties owed to Ms. Spencer was grossly negligent, willful, wanton, malicious and reckless.

3.73  As a direct and proximate result of such grossly negligent, willful, wanton, reckless and malicious conduct, Ms. Spencer suffered injuries and death, and also suffered extreme pain, suffering, and mental anguish, all of which required medical treatment.  As a result, Ms. Spencer incurred significant medical expenses.

3.74  WHEREFORE, upon information and belief, West Mississippi Management controlled the management, care and treatment of the residents of Shady Lawn, such as Ms. Spencer, and are responsible for the negligent acts complained of herein.  Based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## COUNT NINE: CLAIM OF DUTY OF WEST MISSISSIPPI MANAGEMENT TO MS. SPENCER BASED ON AGENCY

3.75  Plaintiff hereby re-alleges and incorporates the allegations in paragraphs 1.01 through 3.74 as if fully set forth herein.

3.76  Defendants West Mississippi Management were the agents of Shady Lawn and, as such agents they negligently failed to fulfill their duties owed to third persons, such as Ms. Spencer.

3.77    In its failure to fulfill its duties to Shady Lawn, West Mississippi Management are liable for their negligence, in the performance of its duties to such third persons, such as Ms. Spencer.

3.78    As articulated herein, West Mississippi Management controlled the management, operation and activities of Shady Lawn to such an extent that it amounted to a duty of care owed to third persons, such as Ms. Spencer.

3.79    As articulated herein, West Mississippi Management breached the standard of care, by and through its acts of omission and commission, which caused or contributed to the injuries and death of Ms. Spencer.

3.80    West Mississippi Management owed an obligation to use its control, "support", and decision making not to cause injury or death to those third persons who were residents of Shady Lawn, including Ms. Spencer.

3.81    West Mississippi Management violated their obligation/duty relating to its control of Shady Lawn, which violation of its obligation/duty caused or contributed to the injuries and death of Ms. Spencer.

3.82    WHEREFORE, based on the conduct set forth above of Separate Defendants, Plaintiff asserts a claim for judgment for compensatory and punitive damages against these Separate Defendants including, but not limited to, medical expenses, physical pain and suffering, mental anguish, disability, humiliation, disfigurement and death in an amount to be determined by the jury, plus costs and all other relief to which Plaintiff is entitled by law.

## **PRAYER FOR RELIEF**

Pursuant to Mississippi Rules of Civil Procedure, Plaintiff demands that all issues of fact in the case be tried to a jury.

WHEREFORE, the Plaintiff, Roy James, Individually, and on behalf of and for the use and benefit of the wrongful death beneficiaries of Gwendolyn Spencer, and for her causes of action, prays for judgment against all Defendants, as follows:

1. For damages to be determined by the jury, in an amount exceeding the minimum jurisdictional amount of this Court, and adequate to compensate Plaintiff for all the injuries and damages sustained;

2. For all general and special damages caused by the alleged conduct of Defendants;

3. For the costs of litigating this case;

4. For punitive damages sufficient to punish Defendants for their egregious conduct and to deter all Defendants from repeating such atrocities; and

5. For all relief to which Plaintiff is entitled by Mississippi law.

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, sues and demands judgment of and from the Defendants, for all damages allowed under law including compensatory damages and punitive damages in an amount to be determined by the jury, and for any such other relief which the Court may deem appropriate.

RESPECTFULLY SUBMITTED, this the _26_ day of February, 2018.

ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER

BY: _____
R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB #102345)
COURTNEY M. WILLIAMS (MSB #102347)
WILLIAMS NEWMAN WILLIAMS, PLLC
129 B. SOUTH PRESIDENT ST. (39201)
Post Office Box 23785

Jackson, Mississippi 39225
Tel:   (601) 949-5080
Fax:   (601) 949-5538
Email: paul@wnwlegal.com

## IN THE CIRCUIT COURT OF WARREN COUNTY, MISSISSIPPI

ROY JAMES, INDIVIDUALLY,
AND ON BEHALF OF AND FOR THE USE
AND BENEFIT OF THE WRONGFUL
DEATH BENEFICIARIES OF
GWENDOLYN SPENCER                                              **PLAINTIFF**

VS.                                              CAUSE NO.:_____

SHADY LAWN, LLC d/b/a SHADY LAWN
HEALTH ND REHABILIATION CENTER,
WEST MISSISSIPPI MANAGEMENT
ASSOCIATES, LLC, UNIDENTIFIED ENTITIES
1-10, AND JOHN DOES 1-10 (as to the SHADY
LAWN NURSING HOME)                                              **DEFENDANTS**

### CERTIFICATE OF EXPERT CONSULTATION
### PURSUANT TO MISSISSIPPI CODE ANNOTATED § 11-1-58

I hereby certify pursuant to Miss. Code Ann. § 11-1-58(1)(a) that I have reviewed the

facts of this case and have consulted with at least one expert qualified pursuant to the Mississippi

Rules of Civil Procedure and the Mississippi Rules of Evidence to give expert testimony as to

standard of care or negligence and who I reasonably believe is knowledgeable in the relevant

issues involved in this action. I have concluded on the basis of such review and consultation that

there is a reasonable basis for the commencement of this action.

SO CERTIFIED this ____ day of February 2018.

_____
R. PAUL WILLIAMS, III

R. PAUL WILLIAMS, III (MSB# 102345)
COURTNEY M. WILLIAMS (MSB# 102347)
MATT NEWMAN (MSB# 103654)
WILLIAMS NEWMAN WILLIAMS, PLLC
129B South President Street (39201)
Jackson, Mississippi 39225-3785


**EXHIBIT A**